SEALED

# United States District Court

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
AUG 12 2015
CLERK, U.S. DISTRICT COURT
By _____ Deputy

__NORTHERN__ DISTRICT OF __TEXAS__

(Name, address or Brief description of person, property or premises to be searched)
THE SEARCH OF MOBILE ELECTRONIC DEVICE TARGET DEVICE #5 A WHITE APPLE iPhone WITH CRACKED SCREEN MODEL MGD-32LL/A

**APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT**

CASE NUMBER: 3-15-mJ-537-BF

I __JOSEPH M. MATHEWS__ being duly sworn depose and say:

I am a(n) __Special Agent with the FEDERAL BUREAU OF INVESTIGATION__ and have reason to believe that on the person of or __XX__ on the property or premises known as (name, description and/or location)

THE SEARCH OF MOBILE ELECTRONIC DEVICE TARGET DEVICE #5 A WHITE APPLE iPhone WITH CRACKED SCREEN MODEL MGD-32LL/A

in the __NORTHERN__ District of __TEXAS__ there is now concealed a certain person or property, namely (describe the person or property to be seized)

(SEE ATTACHMENT B).

**which is** (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)
property that constitutes evidence of the commission of a crime, contraband, the fruits of crime, and is, otherwise, criminally possessed, **concerning a violation of Title** __21__ **United States code, Section(s)** __846__. **The facts to support a finding of Probable Cause are as follows:**

(SEE ATTACHED AFFIDAVIT OF FBI SPECIAL AGENT JOSEPH M. MATHEWS).

**Continued on the attached sheet and made a part hereof.**    XX Yes __ No

_Signature of Affiant_
JOSEPH M. MATHEWS
Special Agent, FBI

Sworn to before me, and subscribed in my presence

August 12, 2015 @ 11:14 am    at    __Dallas, Texas__
Date                                    City and State

Honorable Paul D. Stickney
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF THE | * | TO BE FILED UNDER SEAL |
| APPLICATION FOR A SEARCH | * | |
| WARRANT AUTHORIZING | * | |
| THE SEARCH OF MOBILE | * | |
| ELECTRONIC DEVICES | * | |

### AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

### Introduction

I, Joseph M. Mathews, a Special Agent (SA) of the Federal Bureau of Investigation (FBI), being duly sworn, state the following:

1. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510 (7), Title 18, United States Code, in that I am empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516 of Title 18, United States Code.

2. I am a Special Agent with the Federal Bureau of Investigation, and have been since October 2010. I am a Special Agent within the FBI and have been assigned to the Hybrid Southwest Border Squad, which investigates Southwest Border violations to include, but not limited to drug trafficking, money laundering, extortion, weapons trafficking and kidnapping. Over the past four and a half years I have received training and experience related to drug trafficking organizations specific to the illegal drug cartels

1

located in Mexico and illegal drug activities in the United States. I have also received specialized training on the Universal Forensic Extraction Device utilized to extract evidentiary data from cellular telephones and other electronic devices.

3. I have been involved in numerous investigations of individuals involved in smuggling and trafficking illegal controlled substances and laundering the proceeds derived there from. I have experience in the use of surveillance techniques, pen registers, Title III wire taps, undercover operations, electronic monitoring, the use of confidential informants, debriefing of defendants, and the drafting and execution of search and arrest warrants. These investigations have resulted in the seizure of large quantities of illegal drugs and proceeds derived from drug smuggling and trafficking activities. I am familiar with the ways that drug traffickers conduct their business.

4. My familiarity includes: the various means and methods by which drug traffickers import and distribute drugs; their use of cellular telephones and calling cards to facilitate drug activity; and their use of numerical codes and code words to conduct drug transactions. I know that organized controlled substance trafficking organizations utilize cellular telephones as instruments of communication and to store messages, names, telephone numbers, codes, and other electronic data in furtherance of their criminal activities.

5. I am familiar with the facts and circumstances of the investigation set forth below through my personal participation; from discussions with other federal agents and local law enforcement officers; and from my review of records and reports relating to the investigation. Because this affidavit is submitted for the limited purpose of securing a

search warrant, I have not included details of every aspect of the investigation; rather only those facts necessary to establish probable cause.

6.   I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of **TARGET DEVICES #1a through #1j, #2, #3a, #3b, #4a,#4b, and #5** (electronic devices more specifically described in Attachment A), which are currently in law enforcement possession, and the extraction from them of the electronically stored information described in Attachment B.

7.   The items to be searched are described as the following:

Motorola Sprint Model V3M DEC 02007206065 and its SIM Chip.
**(TARGET DEVICE #1a).**

Kyocera Cellular telephone Model Presto, MEID 268435459914119934 and its SIM Chip.
**(TARGET DEVICE #1b).**

Kyocera Cellular telephone Model Torino MEID 268435457814044379 and its SIM Chip.
**(TARGET DEVICE #1c).**

Sharp Aquos Model 306SH MEID 99000527344624, IMEI 990005273446246 and its SIM Chip.
**(TARGET DEVICE #1d).**

Kyocera Model E4210, DEC 268435462507880583 and its SIM Chip.
**(TARGET DEVICE #1e).**

Samsung Model SM-G900V IMEI 99004944636467 and its SIM Chip.
**(TARGET DEVICE #1f).**

Samsung Model SCH1200 IMEI 990003337264770 and its SIM Chip.
**(TARGET DEVICE #1g).**

Samsung Model SM-G900A IMEI 353920062433752 and its SIM Chip.
**(TARGET DEVICE #1h).**

3

Nokia Model RM-1018 IMEI 355141062995975 and its SIM Chip.
(**TARGET DEVICE #1i**).

Kyocera Model C6730 DEC 256691510403299424 and its SIM Chip.
(**TARGET DEVICE #1j**).

LG Flip phone IMEI 014153000545000-3 SN 412CYLH545000 and its SIM Chip.
(**TARGET DEVICE #2**).

Samsung Galaxy Model S4 Active with all identifiers removed and its SIM Chip.
(**TARGET DEVICE #3a**).

LG Model LGE980 IMEI 013520005083995 S/N 405KPNY508399.
(**TARGET DEVICE #3b**).

White Iphone with black case Model Iphone 6 and its SIM Chip.
(**TARGET DEVICE #4a**).

ZTE Flip phone Model Z222 IMEI 866011026689760 S/N 327B50265E8L and its SIM Chip.
(**TARGET DEVICE #4b**).

White Apple Iphone with cracked screen Model MGD-32LL/A and its SIM Chip.
(**TARGET DEVICE #5**).

8.     **TARGET DEVICES #1a through #1j, #2, #3a, #3b, #4a, #4b, and #5**

("the **TARGET DEVICES**") are currently located at the Federal Bureau of Investigations, Dallas Field Office, 1 Justice Way, Dallas, 75220, where they have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the **TARGET DEVICES** were first seized by law enforcement.

9.     The warrant that has been applied for would authorize the forensic examination of all the **TARGET DEVICES** for the purpose of identifying and seizing electronically stored data as described in Attachment B. I believe that probable cause

4

exists that all the **TARGET DEVICES** include evidence of offenses in violation of 21 U.S.C. §841(a)(1) (possession of a controlled substance with intent to distribute); 21 U.S.C. §843(b) (use of a telecommunication facility to facilitate a drug felony); 21 U.S.C. §846 (conspiracy to possess with the intent to a distribute controlled substance); and 18 U.S.C. §§ 1956, and 1957 (the laundering of monetary instruments and engaging in monetary transactions in proceeds derived from specified unlawful activity).

## PROBABLE CAUSE

10. In 2012, FBI Dallas and the Dallas Police Department merged two already ongoing drug trafficking investigations into a joint investigation of multiple high level drug trafficking cells in the Dallas, Texas area. Over the past three years, numerous individuals have made themselves available to FBI Under Cover Employees ("UCEs") to discuss drug trafficking, engage in drug trafficking activities, distribute illegal drugs, and launder drug proceeds. Based on this investigation and multiple other federal and local investigations, Juan Zuniga a/k/a Z, Adrian Miramontez a/k/a AD, Jose Amaya and Juan Arellano were identified as high level illegal drug distributors in the Dallas, Texas area.

11. **Juan Zuniga (TARGET DEVICES #1a through 1j):** Juan Zuniga was identified early on in this investigation as a kilogram quantity cocaine distributor in the Dallas Metroplex. FBI UCEs were introduced to Zuniga and his associates and began to interact socially, as well as discussing illegal drug trafficking, with him. DEA Dallas intercepted Zuniga on wire intercepts and identified Zuniga as a source of supply ("SOS") of cocaine to Corey Nelson, a co-conspirator in this investigation. UCEs were able to purchase cocaine from Corey Nelson, who was supplied cocaine by Zuniga, and,

on a separate occasion, purchase cocaine from Rudolpho Mayes, who was a runner for Zuniga. In January 2014, a FBI UCE contacted Zuniga via cellular telephone to set up a meeting to try and purchase approximately nine ounces of cocaine from Zuniga. The UCE met with Zuniga and was told that Zuniga was waiting on a shipment of cocaine, but he would not break it down (meaning that he would not break kilograms of cocaine down to smaller amounts).

12. **Ernesto Oliverez (TARGET DEVICES #2):** In February 2013, UCEs had been dealing socially and conducting illegal drug trafficking with an individual known as Jose Guerrero a/k/a JD. Guerrero had then introduced the UCEs to an individual named Ernest Olivarez. Olivarez worked for Guerrero; he would distribute methamphetamine and pick up illegal drug proceeds for Guerrero. On February 22, 2013, Olivarez met Guerrero in the presence of FBI UCEs and gave Guerrero approximately $13,000; Olivarez told Guerrero that he had an additional $10,000 that he would get to him. Following this exchange, Olivarez told FBI UCEs that he had been picking up illegal drug proceeds for Guerrero.

13. **Adrian Miramontez (TARGET DEVICES #3a and #3b):** In 2014, UCEs were introduced to Adrian Miramontez, a methamphetamine SOS in the Dallas metroplex. In late 2014, UCEs were able to purchase ounce quantities of methamphetamine from Miramontez. In Early 2015, FBI Dallas was able obtain an order for wire interception of Miramontez's cellular telephone. Through those wire taps, FBI Dallas was able to ascertain that Miramontez had kilogram quantities of methamphetamine to distribute. By his own admission to an FBI UCE, Miramontez had

multiple SOSs for methamphetamine; this was confirmed through the wire interceptions. In July 2015, a state search warrant was served on Miramontez's residence following his indictment and arrest; the search uncovered multiple pounds of methamphetamine and marijuana.

14. **Jose Amaya (TARGET DEVICES #4a and #4b):** FBI UCEs were introduced to an individual named Jose Amaya in 2014; Amaya had just served a 10-year prison sentence for drug trafficking. Amaya met with the UCEs and told them that he had a trucking business that he had started after he had been released from prison. Amaya used his trucking business to transport illegal drugs throughout Texas. In early 2015, FBI Dallas was able to obtain an order for wire intercepts of Amaya's cellular telephone. Amaya was intercepted discussing drug trafficking with multiple individuals during the authorized period. Amaya further brokered a kilogram methamphetamine transaction with an UCE in which he provided a kilogram of methamphetamine to the UCE from his SOS.

15. **Juan Arellano (TARGET DEVICE #5):** Juan Arellano was introduced to FBI UCEs as a cocaine SOS in the Dallas metroplex. In May 2015, a FBI UCE was able to purchase approximately 4.5 ounces of cocaine from Arellano; Arellano utilized his cellular telephone to set the transaction up. A short time later, Arellano told an FBI UCE that he had multiple kilograms of cocaine to distribute; he priced the kilograms to the UCE at $28,500. Arellano had multiple customers of cocaine in the Dallas metroplex. In early 2015, he recounted to a UCE that one of his runners had been robbed of five

kilograms of cocaine in Mesquite, Texas. His runner was shot, but was not killed, which left Arellano having to pay his Mexican SOS a very large sum of money.

16. All five of the individuals associated with the **TARGET DEVICES** were indicted in the Northern District of Texas on June 23, 2015 and subsequently arrested in a multi-agency arrest operation on July 15, 2015. During this operation, large sums of cash, numerous weapons, large quantities of illegal drugs, and numerous vehicles were seized. Additionally, **TARGET DEVICES 1a through 1j** were seized from Juan Zuniga's residence at 5047 Mexicana Road, Dallas, Texas; **TARGET DEVICE 2** was seized from Ernesto Olivarez's residence at 605 Kings Way, Mansfield, Texas; **TARGET DEVICES 3a and 3b** were seized from 2915 Alabama, Dallas, Texas; **TARGET DEVICES 4a and 4b** were seized from Jose Amaya's residence at 3236 N. Galloway Avenue, Mesquite, Texas; and **TARGET DEVICE 5** was seized from Juna Arrellano's residence at 6600 Buckeye, Rowlett, Texas.

17. Affiant believes the **TARGET DEVICES** contain stored messages, names, telephone numbers, codes, and/or other electronic data in furtherance of the organized criminal enterprise that is distributing large quantities of methamphetamine ICE and cocaine.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

*18.* Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can oftentimes be recovered with forensics tools.

> i. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **TARGET DEVICES** were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the **TARGET DEVICES** for the following reasons:
>
> > a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).
> >
> > b. Forensic evidence on the **TARGET DEVICES** can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.
> >
> > c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.
> >
> > d. The process of identifying the exact electronically stored information on storage medium that are necessary to draw an accurate conclusion is a

dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

ii. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

## CONCLUSION

19. I submit that this affidavit supports probable cause for a search warrant / search warrants authorizing the examination of the **TARGET DEVICES** (described in Attachment A) to seek the items described in Attachment B.

_____
Joseph M. Mathews
Federal Bureau of Investigation

Subscribed and sworn to before me by said Affiant on this the /2 day of August, 2015.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF TEXAS

## ATTACHMENT B

All records on the Target Devices described in Attachment A that relate to violations of 21 U.S.C. § 841(a)(1) (possession of a controlled substance with intent to distribute); 21 U.S.C. § 843(b) (use of a telecommunication facility to facilitate a drug felony); and 21 U.S.C. § 846 (conspiracy to possess with the intent to a distribute controlled substance), including, but not limited to, the following:

a. lists of customers and related identifying information;

b. text messages and other non-verbal communications stored on the **TARGET DEVICES.**

c. records of incoming and outgoing calls received and placed;

d. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

e. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

f. any information recording the schedules or travel of Juan Zuniga, Ernesto Oliverez, Adrian Miramontez, Jose Amaya, and Juan Arellano;

g. all bank records, checks, credit card bills, account information, and other financial records; and

h. any and all photographs related to the distribution of narcotics and associates involved in the related importation/facilitation/distribution of narcotics.

i. evidence of user attribution showing who used or owned the **TARGET DEVICES** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.